**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

STEVEN TURNER and
LISA TURNER,

        Plaintiffs,

vs.                                    Case No. 3:07-cv-374-J-32TEM

PENNSYLVANIA LUMBERMEN'S
MUTUAL FIRE INSURANCE
COMPANY,

        Defendant.

_____

**ORDER**[1]

Plaintiffs Steven and Lisa Turner, husband and wife, have filed this uninsured motorist claim against insurance carrier Pennsylvania Lumbermen's Mutual Fire Insurance Co. ("Lumbermen's") for damages they alleged were caused by a motor vehicle accident. Defendant Lumbermen's removed the case from state court to federal court based upon diversity of citizenship of the parties. (Doc. 1.) Before the Court is Plaintiff's Motion For Permissive Joinder, Leave To File Amended Complaint And Remand Of Action To State Court. (Doc. 6.) The Court considers the motion, defendant's response and plaintiffs' reply, as well as the pleadings and submissions

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

of the parties. (Docs. 2, 3, 10, 15.)[2]

**I.     Background**

Plaintiffs filed their complaint on February 21, 2007 in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida. They allege that they sustained injuries when on November 15, 2005, the vehicle driven by plaintiff Steven Turner was struck by a vehicle negligently operated by an uninsured driver, Mauro C. Desouza ("Desouza"), while on Interstate 95 in the State of Florida. (Doc. 2 at ¶¶ 2, 11.) At the time of the accident, Steven Turner maintained an automobile insurance policy with Lumbermen's which provided "UM coverage." (Doc. 2 at ¶¶ 9, 10.) Plaintiffs allege that Desouza was an "'uninsured or underinsured motorist'" within the terms of the Lumbermen's policy. (Id. at ¶ 12.)[3] Steven Turner demands recovery of benefits from Lumbermen's for his injuries, and Lisa Turner seeks loss of consortium damages. (See Doc. 2 at ¶¶ 17-20.)

On May 4, 2007,[4] Lumberman's filed a Notice of Removal pursuant to 28

---

[2]     Neither party requested the Court conduct an evidentiary hearing. See Sunseri v. Macro Cellular Partners, 412 F.3d 1247 (11th Cir. 2005)(no abuses of discretion for district court to decide jurisdiction question on the basis of affidavits and other documents when neither party makes a timely and unequivocal request for an evidentiary hearing.)

[3]     The record reflects that Desouza "[did] not carry bodily injury coverage" and was thus an "uninsured motorist." (Doc. 10 at 5, 13.)

[4]     Lumbermen's states that it was served with a summons and copy of the complaint on April 6, 2007. (Doc. 1 at ¶ 4.)

U.S.C. § 1441(a), contending that this Court has original jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332. (Doc. 1 at ¶ 6.) In support, Lumbermen's alleges that while plaintiffs' complaint "alleges that each of them was a resident of the State of Florida," upon information and belief, they currently reside in Georgia "and are therefore residents of Carroll County, Georgia." (Doc. 1 at ¶ 7(a) and (d).) Defendant also alleges that Lumbermen's "is a Pennsylvania corporation which has been and remains a citizen of Pennsylvania with a current principal business address of . . . Philadelphia, PA . . ." and is not a citizen of Florida. (Doc. 1 at ¶ 7(b) and (c).) The parties do not dispute that the amount in controversy exceeds the $75,000.00 jurisdictional requirement for diversity jurisdiction.

Also on May 4, 2007, Lumbermen's answered the complaint and asserted various affirmative defenses, including Turner's alleged comparative negligence. Lumbermen's also alleged that it "is entitled to the procedures, protections and benefits of § 768.81, Florida Statutes, Fabre v. Marin, 623 So.2d 1182 (Fla. 1993), and an apportionment of damages between and among tortfeasors pursuant to Florida law," the so-called *Fabre* defense.[5] (Doc. 3 at 4, 7 (first and ninth affirmative defenses.)

---

[5] "The term *Fabre* defense refers to a defendant's contention that a non-party defendant is wholly or partially responsible for the negligence alleged." Michael v. Medical Staffing Network, Inc., 947 So.2d 614, 617 n.3 (Fla. 3d DCA 2007)(citations omitted).

On May 22, 2007, plaintiffs filed their motion to amend their complaint to join Desouza and to remand the case to state court. (Doc. 6.) Plaintiffs state that the proposed amendment "is done in response to Affirmative Defenses filed by Defendant," which added the "'*Fabre'* defendant." (Doc. 6 at 3, 5.) The proposed first amended complaint alleges that plaintiffs Steven and Lisa Turner "at all times material hereto" were citizens of the State of Florida, and that Desouza "is a permanent United States citizen domiciled in the State of Florida." (Doc. 6-2 at ¶¶ 1, 2 and 4.) As to their own citizenship, plaintiffs Steven and Lisa Turner each submitted affidavits dated August 8, 2007, in which they state that on August 11, 2006, they "took shelter" with their daughter in Georgia because their home in Orange Park, Florida "was entering foreclosure on February 23, 2007":

> My wife and I have always considered Florida our home and we certainly do not intend on staying at my daughter's Georgia residence permanently.
>
> We have kept our VyStar checking and saving accounts in Florida.
>
> I, Steven Turner, still have my Florida driver's license.

They state they retained a Florida post office box mailing address. (Docs. 15-2, 15-3.) Characterizing both the plaintiffs and Desouza as citizens of Florida, plaintiffs contend that joinder of Desouza as a defendant would destroy complete diversity of citizenship, and the Court's original diversity jurisdiction. For this reason, plaintiffs argue that the case must be remanded to state court. (Doc. 6.)

Lumbermen's opposes the motion on two grounds: 1) Desouza is not an indispensable party in the Turners' action against Lumbermen's for uninsured motorist benefits, and 2) even if he were to be joined, complete diversity of citizenship continues to exist because Plaintiffs are "residents of Georgia," Desouza "is alleged to be a Florida resident," and Lumbermen's is a citizen of Pennsylvania for diversity purposes. (Doc. 10 at 3-5.)

**II.     Discussion**

   **A.     Diversity of Citizenship**

Diversity jurisdiction exists over a controversy between citizens of different states. 28 U.S.C. § 1332(a). For purposes of diversity jurisdiction, a corporation is a citizen of any state in which it has been incorporated as well as the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). The citizenship of an individual is determined by his or her "domicile," i.e. "the place of his true, fixed, and permanent home and principal establishment . . . to which he has the intention of returning whenever he is absent therefrom." McCormick v. Aderholt, 293 F.3d 1254, 1257-58 (11th Cir. 2002)(quotation and citation omitted). In removal cases, diversity jurisdiction must exist both at the time the original action was filed in state court and at the time of removal. Stevens v. Nichols, 130 U.S. 230, 231 (1889).

The parties dispute whether plaintiffs in this case are "citizens" of Florida or of Georgia. However, there is no dispute that defendant Lumbermen's is not "citizen"

of either Florida or Georgia; Lumbermen's alleges in its petition for removal that it is a Pennsylvania corporation with a current principal business address of Philadelphia, Pennsylvania.  (Doc. 1 at § 7(b) and (c).)  Plaintiffs offer no evidence to the contrary. Thus, complete diversity exists in this case between the Turners, regardless of whether they are domiciled in Georgia or Florida, and Lumbermen's, under the original complaint and at the time of removal.

Nor do the parties dispute that Desouza, who plaintiffs seek to join as a defendant, is a citizen of the state of Florida for purposes of diversity jurisdiction. Plaintiffs' proposed first amended complaint alleges that defendant Desouza "is a permanent United States resident domiciled in the State of Florida." (Doc. 6-2 at ¶ 4.) Lumbermen's acknowledges that "DeSouza is alleged to be a Florida resident." (Doc. 10 at 4.)

### B.   Joinder of Uninsured Motorist as Defendant

Rule 20, providing for permissive joinder of parties, states, in part, that a defendant may be joined in an action if plaintiff asserts against them "jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.  A . . . defendant need not be interested in . . . defending against all the relief demanded." Fed. R. Civ. P. 20(a).  In plaintiffs' proposed first amended complaint, Steven Turner asserts a

negligence claim for damages against Desouza (Count I) and a UM insurance contract claim for damages against Lumbermen's (Count II); and Lisa Turner pleads a loss of consortium claim for damages against both Desouza and Lumbermen's. All three claims arise out of injuries sustained by Steven Turner in an automobile accident that occurred on November 15, 2005. (Doc. 6-2 at ¶ 5.)

"Under Florida law, an insured is not obliged to sue the tortfeasor as a precondition to seeking UM benefits from [his] insurer." Robinson v. Auto Owners Ins. Co., 718 So.2d 1283, 1285 (Fla. 2d DCA 1998); see also Hartford Ins. Co. v. Minagorri, 675 So.2d 142, 143 (Fla. 3d DCA 1996). Additionally, the uninsured motorist is not an indispensable party. Fontaine v. Geico Gen. Ins. Co., 646 So.2d 797 (Fla. 1st DCA 1994). However, the plaintiff in UM cases may properly join both the alleged tortfeasor/uninsured motorist, as well as the uninsured motorist insurer as co-defendants. See Lamz v. Geico Gen. Ins. Co., 803 So.2d 593, 594 n.2 (Fla. 2001)(though no longer required by statute, parties agreed that uninsured and uninsured carrier were properly named as defendants, which was not an issue before the court); Young v. Ganese Dharamdass, 695 So.2d 828, 829 (Fla. 4th DCA 1997)(earlier version of statute requiring joinder was not the only method in which UM carrier and tortfeasor could be joined in one action). Thus, Desouza may be properly joined in this action, subject to the Court's analysis of 28 U.S.C. § 1447(e) below.

### C. **Plaintiffs' Domicile**

Whether or not the joinder of Florida resident Desouza as a defendant would defeat complete diversity, and thus the Court's subject matter jurisdiction, hinges upon whether the Turners are domiciled in Florida or in Georgia.

"Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction." McCormick, 293 F.3d at 1257. A party's "domicile," rather than his or her residence, is determinative of citizenship for diversity jurisdiction. Jagiella v. Jagiella, 647 F.2d 561, 563 (5th Cir. 1981); Combee v. Shell Oil Co., 615 F.2d 698, 700 (5th Cir. 1980).[6] "Domicile" is not necessarily synonymous with "residence," and "one can reside in one place, but be domiciled in another." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989).

"A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." Sunseri v. Macro Cellular Partners, 412 F.3d 1247, 1249 (11th Cir. 2005)(quotations and citations omitted). Once a person establishes domicile, it continues until the person establishes a new domicile, satisfying both the mental and physical requirements of domicile in a new state. McDougald v. Jenson, 786 F.2d 1465, 1483 (11th Cir. 1986); Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir. 1974). A

---

[6] In Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

change in domicile requires the concurrence of 1) physical presence at the new location with (2) an intention to remain there indefinitely. Scroggins v. Pollock, 727 F.2d 1025, 1026 (11th Cir. 1984). The party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction. McCormick, 293 F.3d at 1257. Thus Lumbermen's has the burden of establishing plaintiffs' domicile in Georgia. The factors considered in determining domicile include home ownership, driver's license, voting registration, location of family, location of business and where taxes are paid. Jaisinghani v. Capital Cities/ABC, Inc., 973 F. Supp. 1450, 1453 (S.D. Fla. 1997). While an individual's statements of intent are also considered in determining domicile, these subjective expressions "are usually accorded little weight when in conflict with the facts or when the question is close." Jaisinghani, 973 F. Supp. at 1453 (citing Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir. 1972)). No single factor is conclusive; rather, the Court looks to the "totality of the evidence." Jones v. Law Firm of Hill and Ponton, 141 F. Supp.2d 1349, 1355 (M.D. Fla. 2001).

Regardless of what the Turners may now intend,[7] the Court must look at the facts as of February 21, 2007, the date they filed this lawsuit. Scroggins, 727 F.2d at 1028. The Turners concede that at the time this lawsuit was filed, they were physically located in Georgia, residing at their daughter's home, satisfying the first

---

[7] The record contains no indication that the Turners have yet returned to Florida.

element of relocating domicile.  This case therefore turns on the factual issue of whether as of February 21, 2007, the plaintiffs intended to remain in Georgia indefinitely.  The evidence reflects that on August 11, 2006, six months before this lawsuit was filed, the Turners "took shelter" in their daughter's Georgia home because of the impending mortgage foreclosure of their house in Florida, leaving their checking and savings account in Florida, and retaining a Florida driver's license and mailing address.  Additionally, the plaintiffs' affidavits state that they owned their residential property in Florida until February 23, 2007, two days *after* they filed their complaint in Florida Circuit Court.  (See Docs. 15 at 3; 15-2 at 1.)

These facts are not unlike those concerning plaintiff's domicile in Scroggins, supra.  In Scroggins, plaintiff brought a medical malpractice action in Georgia district court against Georgia defendants relating to the death of her husband.  Plaintiff had lived in Georgia, but left the state after her husband died, moving moved to Columbia, South Carolina to acquire a graduate degree at the University of South Carolina.  The court affirmed dismissal of the case based upon a lack of subject matter jurisdiction because complete diversity did not exist between plaintiff and defendants.  Finding that plaintiff had not changed her domicile from Georgia, and thus was a "citizen" of Georgia for purposes of diversity, the court said that "[plaintiff] clearly intended to leave Washington, Georgia, but her plans after that were more nebulous. Instead of consistently exhibiting an intent to remain in South Carolina, there were many

indications that she considered moving to Florida or even returning to Georgia." Scroggins, 727 F.2d at 1027. "Her domicile before she moved to South Carolina continued until she obtained a new one. Georgia remained [plaintiff's] domicile for diversity purposes." Id. at 1028. See also Mas, 489 F.2d at 1400 (woman's Mississippi domicile was not disturbed by her three years in Louisiana where she was a university graduate assistant but had no intention of remaining there).

The record presents nothing to conflict with the Turners' sworn statement that they do not intend to remain in Georgia in their daughter's home, and that they intend to buy a new home in Florida. (Docs. 15-2 at 1; 15-3 at 1.) Moreover, the objective facts support the position that Florida remains the Turners' domicile. Accordingly, Lumbermen's has failed to prove that the Turners had changed their Florida domicile as of February 21, 2007, the date they filed their complaint.

### D.    **Joinder Pursuant To 28 U.S.C. § 1447(e)**

Finding that plaintiffs' domicile for purposes of determining diversity is Florida, it follows that the joinder of Florida citizen Desouza as a defendant would destroy complete diversity, and the Court would lack subject matter jurisdiction. Resolution of plaintiffs' motion to join Desouza is governed by 28 U.S.C. § 1447(e) which provides:

> (e)    If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court.

11

28 U.S.C. § 1447(e).[8]

In determining whether joinder of a non-diverse defendant should be permitted after removal, a district court must balance the equities involved. Jarriel v. General Motors Corp., 835 F. Supp. 639, 641 (N.D. Ga. 1993); Hughes v. Promark Lift, Inc., 751 F.Supp. 985, 987 (S.D. Fla. 1990). Factors to be considered are: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities. Espat v. Espat, 56 F. Supp.2d 1377, 1382 (M.D. Fla. 1999)(citing Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987)). Upon consideration of these factors, the district court has two options: (1) deny joinder; or (2) permit joinder and remand the case to state court. Ingram v. CSX Transp., Inc., 146 F.3d 858, 862 (11th Cir. 1998); 28 U.S.C. § 1447(e).[9]

---

[8] Though plaintiffs seek to amend their complaint implicating Fed. R. Civ. P. 15(a), the proposed amendment amounts to a joinder, pursuant to Fed. R. Civ. P. 20. In determining whether to grant plaintiffs' motion, the Court must consider 28 U.S.C. § 1447(e). Ingram v. CSX Transp., Inc., 146 F.3d 858, 862 (11th Cir. 1998); see also Bevels v. American States Ins. Co., 100 F. Supp.2d 1309, 1312 (M.D. Ala. 2000)("28 U.S.C. § 1447(e), rather than Rule 15(a), should apply when a plaintiff seeks to amend a complaint to destroy diversity jurisdiction after removal").

[9] If plaintiffs had named Desouza a defendant in their original complaint filed in state court, his presence as a "resident defendant" would have defeated removal, regardless of plaintiffs' domicile. 28 U.S.C. § 1441(b). However, the majority of courts, including the Eleventh Circuit, have held that the resident defendant rule is procedural as opposed to jurisdictional. See Pacheco de Perez v. AT&T Co., 139

Lumbermen's has put Desouza's liability at issue, raising not only the *Fabre* defense,[10] but also comparative negligence. Compare Mercury Ins. Co. of Fla. v. Moreta, 957 So.2d 1242, 1246 (Fla. 2d DCA 2007)(uninsured motorist insurance carrier stipulated that plaintiff had not been comparatively negligent). Lumbermen's makes an oblique attack on plaintiffs' proposed joinder of Desouza as an attempt to add a defendant with no connection to the issues raised by plaintiffs' claims against Lumbermen's. Acknowledging that the law "generally allow[s] for joinder of additional party defendants during the early stages of litigation where the requirements of Fed. R. Civ. Pro. 20(a) are met," Lumbermen's argues that plaintiffs failed to address whether joinder of Desouza arises out of the same transaction or occurrence or whether there would exist "'any question of law or fact common to all defendants'" as required by Rule 20(a). (Doc. 10 at 3.) However, Lumbermen's acknowledges that "it would be disingenuous for [Lumbermen's] to overlook that the causes of action

---

F.3d 1368, 1372 n.4 (11th Cir. 1998); Ada Liss Group v. Sara Lee Branded Apparel, No. 1:06CV610, 2007 WL 634083, at * 3 (M.D.N.C. Feb. 26, 2007). Thus, post-removal joinder of a forum or resident defendant does not destroy subject matter jurisdiction as long as diversity continues to exist. See Spencer v. United States District Court for the N.D. Calif., 393 F.3d 867, 871 (9th Cir. 2004); Ada Liss Group, 2007 WL 634083, at * 4.

[10] Defendant Lumbermen's has not named any *Fabre* defendant, saying that it will timely do so as required by Florida law, and that it is not waiving its right to specifically name Desouza as a *Fabre* defendant. (Doc. 10 at 5.) See Bogosian v. State Farm Mut. Auto. Ins. Co., 817 So.2d 968, 970 (Fla. 3d DCA 2002)(to include a nonparty on the verdict form, defendant must plead as an affirmative defense the negligence of the nonparty and specifically identify the nonparty).

13

alleged in Turner's First Amended Complaint do not arise out of the 11/15/05 motor vehicle accident and involve questions of DeSouza's and Steven Turner's respective negligence if any." (Id.)  Lumbermen's position is belied by its own affirmative defenses which allowed (and perhaps encouraged) plaintiffs to join Desouza as a defendant.

Balancing the factors considered under section 1447(e), the Court finds that defendant Lumbermen's has injected into this case the question of whether plaintiff shared in the alleged negligence causing the car accident.  As framed by Lumbermen's, this is not a case solely about whether there is coverage under the terms of the insurance contract; but it is also about the comparative negligence of the plaintiff Steven Turner and Desouza, and about "an apportionment of damages between and among tortfeasors pursuant to Florida law." (Doc. 3 at 4, 7.)  See generally State Farm Mut. Auto. Ins. Co. v. Clark, 544 So.2d 1141, 1142 (Fla. 4th DCA 1989)(uninsured motorist carrier may assert liability defenses).  Convinced that plaintiffs' proposed amendment and joinder is in response to affirmative defenses filed by the defendant (see Doc. 6 at 3), the Court finds that 1) plaintiffs would be significantly injured if the amendment is denied, and 2) the purpose of the amendment is not to defeat diversity.

Further, plaintiffs have not been dilatory in seeking to name Desouza as a defendant.  Lumbermen's filed its answer and affirmative defenses making plaintiff

14

Steven Turner's and Desouza's comparative negligence an issue on May 4, the same day it filed its notice of removal. Plaintiffs' motion to amend their complaint and to join Desouza as a defendant was filed less than three weeks later, prior to any other activity in this case. Plaintiffs should be permitted to amend their complaint to join uninsured motorist Desouza as a defendant. Because joinder of Desouza destroys the Court's subject matter jurisdiction, the case must be remanded to state court. See Ingram, 146 F.3d at 862.

For the foregoing reasons, and upon due consideration, it is hereby

**ORDERED:**

1.    Plaintiff's Motion For Permissive Joinder, Leave To File Amended Complaint And Remand Of Action To State Court (Doc. 6) is **GRANTED**.

2.    The Clerk is directed to file the First Amended Complaint currently attached to Document 6.  (See Doc. 6-2.)

3.    This case is **REMANDED** to the Circuit Court for the Fourth Judicial Circuit in and for Duval County, Florida. The Clerk is directed to mail a certified copy of this Order to the Clerk of the Circuit Court for the Fourth Judicial Circuit and to close the file.

4.    The parties are to bear their own costs relating to the proceedings before this Court.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of October, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

jl.
Copies to:
Counsel of Record